IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

VOTER V. TRUMP

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

KATHLEEN F. VOTER, FORMERLY KNOWN AS KATHLEEN F. TRUMP,
APPELLEE AND CROSS-APPELLANT,
V.
THE HEIRS, DEVISEES, LEGATEES, ADMINISTRATORS AND EXECUTORS, AND ALL
OTHER PERSONS INTERESTED IN THE ESTATE OF JESSIE E. TRUMP, DECEASED,
REAL NAMES UNKNOWN, ET AL., APPELLEES, AND JOHNSON BIBLE COLLEGE
OF KIMERLIN HEIGHTS, TENNESSEE, APPELLANT AND CROSS-APPELLEE.

Filed July 29, 2014.   No. A-13-577.

Appeal from the District Court for Gage County: PAUL W. KORSLUND, Judge. Affirmed.

Jeffery W. Davis and Robert M. Schafer, of Carlson, Schafer & Davis, P.C., L.L.O., for appellant.

Ronald R. Brackle for appellee Kathleen F. Voter.

MOORE, PIRTLE, and RIEDMANN, Judges.

MOORE, Judge.

Johnson Bible College of Kimerlin Heights, Tennessee, now known as Johnson University, appeals from an entry of summary judgment against it by the district court for Gage County. Johnson University argues that the district court erred when it interpreted certain provisions of Jessie E. Trump's will. For the reasons that follow, we affirm.

FACTUAL BACKGROUND

On April 10, 1956, Jessie Trump executed her last will and testament. At issue in this appeal are the provisions of the will concerning real estate owned by Jessie. Section III of the will addressed disposition of Jessie's interests in various parcels of real estate upon her death. The first paragraph of this section of the will provides:

Subject to paragraph I hereof (regarding payment of debts and expenses) I give, devise and bequeath to my son, Charles L. Trump, for and during the term of his natural life only the use, income, rents and profits from the tracts of real estate as hereinafter next described but without power or authority to sell, mortgage or in any manner encumber any part of the real estate that I leave him and in which I give and bequeath to him a life estate only and I further will and provide that the same shall not be or become liable for any of his debts now or at any time in the future incurred by him and that he shall not have power or authority to anticipate or make disposition of the rentals and income therefrom prior to their accrual and payment to him.

Following the above paragraph, six distinct tracts are legally described. Tracts 1, 2, 3, and 4 are located in Gage County, Nebraska, while Tracts 5 and 6 are in Marshall County, Kansas. Section III of the will further provides:

Subject to said life estate of my son, Charles L. Trump therein, I give, devise and bequeath all of said real estate to the child or children of my son, Charles L. Trump, in equal proportion share and share alike, and to the child or children of any deceased child of said son, living at his death.

In case my son does not survive me but does leave child or children [of] him surviving at my death or the child or children of a deceased child or children of him and surviving at my death, then, in that event, I give, devise and bequeath all of said real estate hereinabove described in equal proportion, share and share alike to the child or children of my said son who survive me and to the child or children of any deceased child of my said son that may survive me and by right of representation.

In case my son, Charles L. Trump, does not survive me and leaves no child or children or the issue of any deceased child or children surviving me then, in that event, I direct that my executor hereinafter named shall sell and convert all of said real estate into cash and I do hereby authorize and empower him to sell and convey said real estate and, in that event, to execute good and sufficient deeds and instruments of conveyance for that purpose the same as I might do if living and without the approval or authority of any Court to do so and the net proceeds therefrom I do hereby give, devise, and bequeath as follows:

a. The net proceeds from tracts 1, 2 and 3 as follows:

A one-half part thereof to the Manhattan Bible College of Manhattan, Kansas.

A one-half part thereof to the Johnson Bible College of Kimerlin Heights, Tennessee.

The will did not provide for disposition of the real estate in the event that Charles L. Trump survived Jessie. Jessie died on April 19, 1965, and was survived by her son, Charles. The final decree in the probate proceeding for Jessie's estate ordered that her real estate interests were to be assigned according to the provisions in her will.

Charles died on July 27, 1990, without having any children. His wife Kathleen F. Trump, who was apparently named personal representative in Charles' will, filed an application for informal probate of will and informal appointment of personal representative. On January 11, 1991, Kathleen executed a deed of distribution by personal representative through which she

deeded Charles' real property to herself. The parcels of real property described in the deed of distribution were the four Gage County parcels mentioned in Jessie's will.

Kathleen married Ronald Voter on December 18, 1992, and assumed his surname. According to Kathleen, she has leased, insured, and paid the real estate taxes on the four parcels from the time she assumed ownership in 1991.

## PROCEDURAL BACKGROUND

On May 9, 2011, Kathleen filed a complaint in the district court to quiet title as to the aforementioned four parcels located in Gage County. Naming each person and organization mentioned in Jessie's will as a defendant, Kathleen alleged that she acquired title to the four parcels through adverse possession. She prayed that title be quieted and confirmed in her name.

Default judgment was entered against all named defendants except Johnson Bible College of Kimerlin Heights, Tennessee. During the proceedings, Johnson Bible College revealed that it had become known as Johnson University. As noted above, Johnson University had a potential remainder interest in Tracts 1, 2, and 3. Johnson University filed an answer on August 30, 2011, in which it denied Kathleen's allegations. On June 18, 2012, Kathleen moved for summary judgment on the theory that she had obtained title to these parcels through adverse possession. She later amended her motion, but maintained the adverse possession theory.

At the hearing on the motion for summary judgment, both parties submitted evidence. The district court overruled Kathleen's motion. In its written order, the court noted there was a question of fact regarding whether Kathleen's possession was truly adverse under the facts of the case. The court questioned whether Kathleen, as personal representative of Charles' estate, was charged with notifying Johnson University of Charles' death. The court also stated that Johnson University's status as a nonprofit educational institution should be considered when determining the sufficiency of notice to trigger adverse possession.

Following the denial of Kathleen's motion for summary judgment, Johnson University filed an amended answer and counterclaim, attaching a copy of Jessie's will. Johnson University alleged that Charles only had a life estate in the three parcels by virtue of the language in Jessie's will. Therefore, it asserted that Kathleen wrongfully obtained her interest in the three parcels and that she did not fulfill her duty as personal representative to notify the remaindermen of their interests following Charles' death. Johnson University requested the court impose a constructive trust on the real property and the income and profits derived from the property and order Kathleen to account for all transactions from 1991 to the present.

Kathleen filed a reply to Johnson University's amended answer. For the first time, Kathleen asserted that Johnson University did not have an interest in the disputed real estate based on the language of Jessie's will. Kathleen noted the provisions of the will pertaining to real estate provided Charles with a life estate and conditioned Johnson University's interest on Charles not surviving Jessie and not having any children. Because Charles survived Jessie, Kathleen alleged that Johnson University's interest in the three disputed parcels never came into effect.

On April 9, 2013, Kathleen filed a pleading styled as a "Motion to Dismiss or Motion for Summary Judgment." She asserted that Johnson University should be dismissed from the action or, in the alternative, summary judgment should be granted in her favor because Johnson

University never acquired any interest in the disputed real estate. On May 7, 2013, the district court held a hearing during which it treated Kathleen's filing as a motion for summary judgment. The court received into evidence a copy of Jessie's will and certain pleadings from her probate proceedings.

Kathleen offered into evidence a copy of an "Order Determining Inheritance Tax" from Jessie's probate proceeding. In the order, the county judge recognized there was no provision in Jessie's will providing for the disposition of her property in the event that Charles survived her. For purposes of determining inheritance tax, the county court concluded that Charles was given a life estate interest in Jessie's real property and the remainder passed intestate to Jessie's heirs at law.

Johnson University objected to the introduction of this order, arguing that it was not relevant. The district court initially received the copy of the order and reserved its ruling on relevance. Thereafter, Johnson University offered a copy of the final decree of the probate proceedings for Jessie's estate. When Kathleen objected on relevancy grounds, the district court determined that it would accept both the order determining inheritance tax and the final decree into evidence. Neither party raised further objection to the court's action.

On June 21, 2013, the district court granted Kathleen's motion for summary judgment. In its order, the court found that Johnson University did not acquire an interest in the subject property because of the express terms in Jessie's will. The court noted that in order for Johnson University to have received the disputed property, two conditions had to be fulfilled: (1) Charles must not have survived Jessie and (2) Charles must not have had any issue at his death. Because Charles survived Jessie, the court ruled that Johnson University's interest did not vest, that it did not have an interest in the property that is the subject of Kathleen's quiet title action, and that Kathleen was entitled to summary judgment on her claims against Johnson University. The court further ordered that title to the real estate was quieted and confirmed in Kathleen as to Johnson University.

Johnson University appeals, and Kathleen cross-appeals.

## ASSIGNMENTS OF ERROR

Johnson University assigns five errors on appeal which we condense into four. Johnson University asserts, restated and renumbered, the district court erred in (1) permitting a second motion for summary judgment after having denied the first motion, (2) granting Kathleen's motion for summary judgment, (3) failing to favor Johnson University as a charity, and (4) admitting the 1965 inheritance tax order into evidence.

In her cross-appeal, Kathleen asserts that the court erred when it denied her first motion for summary judgment.

## STANDARD OF REVIEW

A quiet title action sounds in equity. *Obermiller v. Baasch*, 284 Neb. 542, 823 N.W.2d 162 (2012). On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court. *Id.*

In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the court granted the judgment and gives such party the benefit of all reasonable inferences deducible from the evidence. *American Fam. Mut. Ins. Co. v. Wheeler*, 287 Neb. 250, 842 N.W.2d 100 (2014).

## ANALYSIS

*Successive Motions for Summary Judgment.*

Johnson University contends the district court should not have entertained Kathleen's second motion for summary judgment after her first motion had been denied. We disagree.

Neb. Rev. Stat. § 25-1330 (Reissue 2008) provides the procedure for a motion for summary judgment. This section provides:

> A party seeking to recover in district court upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of thirty days from the service of process on the opposing party or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in his or her favor upon all or any part thereof.

As is evident from the language above, the section does not mention or prohibit successive motions.

In this case, Kathleen's first motion for summary judgment was based on an adverse possession theory. The district court denied that motion because it found there were genuine issues of fact as to whether her possession had been adverse to Johnson University. Thereafter, Kathleen moved for summary judgment on a different theory--that Johnson University had no interest under the language of Jessie's will. This theory had not been presented to the court in the first motion but arose following Johnson University's filing of an amended answer and counterclaim after which Jessie's will became the pertinent focus. We find no error in the district court's permitting Kathleen's successive motions for summary judgment in this case.

*Granting of Kathleen's Motion*
*for Summary Judgment.*

The majority of Johnson University's argument focuses on the construction of Jessie's will. Johnson University contends that when the entirety of Jessie's will is considered, it shows that Jessie intended Charles would have only a life estate in the real property and that the remainder interest in the three tracts at issue would go to Charles' children and then to the charitable beneficiaries if Charles did not have any children.

The cardinal rule in construing wills is to ascertain and effectuate the intention of the testator if that intention is not contrary to law. *In re Estate of Mousel*, 271 Neb. 628, 715 N.W.2d 490 (2006). To arrive at a testator's intention expressed in a will, a court must examine the will in its entirety, consider and liberally interpret every provision in the will, employ the generally accepted literal and grammatical meanings of words used in the will, and assume that the maker of the will understood the words stated in the will. *Id.* However, a will is not open to construction unless it is ambiguous. *Lowry v. Murren*, 195 Neb. 42, 236 N.W.2d 627 (1975). Where the language of a will is clear and unambiguous there is no room for construction. *Id.*

In this case, Jessie's will clearly and unambiguously provided that Johnson University's interest was conditioned on (1) Charles' not surviving Jessie and (2) Charles' not having any children or issue of his children that survived Jessie. As noted above, Charles clearly survived Jessie. Therefore, Johnson University's interest never vested.

Johnson University contends that this reading of the will leads to an absurd result because Jessie clearly intended to dispose of her property through her will. We disagree. The intention of the testator is the one expressed by the language of the will and not an entertained but unexpressed intention. *Olson v. Sampson*, 208 Neb. 18, 302 N.W.2d 32 (1981). Further, where it is clear that the testator has not disposed of all his or her property, the courts cannot add provisions to a will which will prevent a partial intestacy. See *Lowry v. Murren, supra*. Here, Jessie's will did not provide for disposition of her real estate in the event that Charles survived her and we cannot add such a provision through judicial interpretation.

We conclude the district court correctly determined that there was no genuine issue of material fact and that Johnson University was not entitled to an interest in the real estate under the provisions of Jessie's will as a matter of law. This assigned error is without merit.

*Johnson University's Status as Charity.*

Johnson University also argues that its status as a charity requires an outcome in its favor in this case. It notes that Nebraska law favors gifts to charity and that courts should "make every effort to give effect to an individual's charitable intent." Brief for appellant at 15.

We agree with Johnson University's proposition that charitable gifts are favorably viewed by courts in this state. See *In re Estate of Bernstrauch*, 210 Neb. 135, 313 N.W.2d 264 (1981). However, we cannot ignore the clear language of Jessie's will. As discussed above, the gift to Johnson University was contingent on Charles and his issue, or children of his issue, not surviving Jessie. Johnson University's alleged status as a charitable organization does not overcome that language. This assigned error is without merit.

*Relevancy of 1965 Inheritance Tax Order.*

Johnson University argues that the district court erred when it received the copy of the inheritance tax order into evidence. In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. *Simon v. Drake*, 285 Neb. 784, 829 N.W.2d 686 (2013).

Even assuming that the inheritance order was not relevant, Johnson University cannot establish that the district court's receipt of the order was prejudicial. The district court did not rely on this evidence when it granted Kathleen's motion for summary judgment. In fact, the court's order demonstrates that its decision was the direct result of its interpretation of Jessie's will. The court merely noted that its decision was consistent with the county court's probate proceedings. This assigned error is without merit.

*Kathleen's Cross-Appeal.*

We have determined the district court correctly concluded that Johnson University did not have any interest in the disputed property. Therefore, we need not determine whether the district court erred when it denied Kathleen's first motion for summary judgment which was based on a theory of adverse possession. See *Carey v. City of Hastings*, 287 Neb. 1, 840 N.W.2d

868 (2013) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it).

CONCLUSION

The district court did not err in granting summary judgment in favor of Kathleen.

AFFIRMED.